IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 15-cv-01904-RPM

CHILDREN'S HOSPITAL COLORADO,

    Plaintiff,
v.

LEXINGTON INSURANCE COMPANY,

    Defendant.
_____

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
_____

Plaintiff Children's Hospital Colorado (CHC) brings a claim for declaratory judgment that a professional liability policy issued by Defendant Lexington Insurance Company covers CHC for defense and indemnity in a medical malpractice lawsuit arising from an incident occurring in February 2008. CHC and Lexington have filed cross motions for summary judgment.

**Facts**

Lexington issued its Excess Healthcare Professional Liability – Claims Made Policy, effective May 1, 2006 to May 1, 2008, to The Children's Hospital Association. The Policy provides professional liability coverage to CHC after exhaustion of CHC's $1,000,000 self-insured retention ("SIR"), which includes defense costs. Section I of the Policy, Insuring Agreement, provides that "A claim for a **medical incident** must be first made against an **Insured** during the policy period…." Section V.C of the Policy, "Duties in the Event of a Claim, Suit, or Medical Negligence," provides, as pertinent here:

> 1. If during the **policy period,** the **First Named Insured** shall become aware of any **Medical Incident** which may reasonably be expected to give rise to a **claim** being made

against any **Insured**, the **First Named Insured** must notify **us** in writing as soon as practicable.

. . . .

Any **claim** arising out of such **medical incident** which is subsequently made against any **Insured** and reported to **us**, shall be considered first made at the time such notice was given to us.

. . . .

2. If a **claim** or **suit** is brought against an **Insured** arising out of a **medical incident**, the **First Named Insured** must:

. . . .

b. Provide us with written notice of the **claim** or **suit** as soon as practicable; and

c. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the **claim** or **suit**.

Naomi Pressey suffered a serious injury at CHC in Denver in February 2008, shortly after her birth. CHC notified AIG Technical Services, Inc. (AIG)[1] of the February 10, 2008 incident involving Naomi Pressey by submitting an AIG reporting form dated April 24, 2008 and received by AIG on April 29, 2008. This was within the Policy's effective period ending May 1, 2008.

The Presseys filed a Complaint against CHC, three physicians, and two nurses on January 14, 2013. CHC retained attorney John Martin to represent it. On October 6, 2014, Martin notified CHC that the Presseys had agreed to dismiss all defendants except CHC. CHC has admitted that it did not submit any information to Lexington about the potential claim or the lawsuit between May 1, 2008 and November 17, 2014.

It is disputed exactly when CHC did first notify Lexington about the filing of the lawsuit. CHC contends its Director of Risk Management, Lisa Shannon, sent a reporting

---

[1] AIG is a Lexington affiliate that handled claims for Lexington.

form dated November 17, 2014 to AIG by fax on that date, and then followed up with a December 2 email to Don Bliss at AIG, attaching the same reporting form, because CHC had received no response from AIG. Along with background information about the Pressey case, the reporting form stated that a mediation had been scheduled and "will be held on November 19, 2014." AIG created a loss run for CHC's claims history on November 18, the day after CHC alleges it faxed the reporting form. Lexington's Answer also states that Lexington "acknowledges that Plaintiff notified Defendant of the [Pressey lawsuit] in November 2014…." However, Lexington now contends CHC first notified it with Shannon's December 2, 2014 email to Bliss.

On November 19, 2014, CHC and the Presseys mediated the case without Lexington's participation. The mediation concluded after CHC made an offer of $475,000 in response to the Presseys' demand of $13,075,000. In the days following the mediation Martin and CHC's general counsel determined that additional mediation would not be pursued.

On December 11, Bliss acknowledged receipt of Shannon's December 2 email and the reporting form, telling Shannon to submit the information to a different email address, which she did. By letter to Shannon dated December 26, 2014, AIG acknowledged receipt of notice of the claim. AIG's acknowledgement letter stated: "AIG Claims, Inc. will commence its review of this matter and will advise you of any need for additional information." AIG set up a claim file for the Pressey lawsuit on December 26, 2014 and assigned Dru King to handle the claim.

AIG/Lexington did not request additional information from CHC, or otherwise direct any communications to CHC, between December 26, 2014 and the date the

3

Pressey case went to trial in March 2015. CHC also did not direct any communications to Lexington again until trial. Trial was originally set to begin January 6, 2015, but was reset to March 16, 2015. On March 17, 2015 CHC (Bryan Storey) sent an email to Bliss at AIG advising that the trial had been rescheduled and "began yesterday," and inquired how Bliss preferred to receive updates on the trial's progress.

On March 18, Bliss responded that CHC should communicate with Dru King. Bliss copied King on the email, including Storey's March 17 email reporting on the trial, and asked King to "provide guidance re trial reporting." On March 19, Martin was approached by the Pressey's attorney about further settlement talks. Martin recommended to CHC that it "stay the course" in light of how the trial was going, even though the Pressey's attorney had told the jury he would be asking for $15 million.

King first requested information from CHC during the second week of trial, in emails dated March 23 requesting copies of the amended complaint, correspondence, and information on when the claim was made, damages experts, the prejudgment interest rate, and prior success of plaintiff's counsel. Also on March 23, Martin spoke with King and told him that he thought the case could settle for $3 million to $5 million. King did not ask him to pursue settlement or see if he could get a firm demand.

On March 26, 2015, AIG sent a letter declining coverage for the Pressey case, incorrectly stating that the first notice of claim directed to CHC was dated August 5, 2008, which was subsequent to the May 1, 2006 to May 1, 2008 effective period of the claims made policy. The trial continued through March 27 and resulted in a verdict in excess of $17 million. After considering the applicability of C.R.S. § 13-64-302(1)(b), the trial court entered judgment against Children's Hospital in the amount of

4

$14,341,538.60.[2]

On April 1, 2015, after CHC contested AIG's denial of coverage and provided proof that it had given notice of the incident to Lexington on April 29, 2008, AIG withdrew its declination of coverage but reserved its rights and requested additional information. On May 12, 2015, AIG sent a second request for more information, again reserved its rights, and told CHC that it had not complied with the Policy requirement of written notice to Lexington as soon as practicable after the lawsuit was brought.

CHC filed this lawsuit seeking a declaration of its rights to coverage under the Policy on September 16, 2015.

**Discussion**

The Colorado Supreme Court has held that the "notice-prejudice" rule applies to "occurrence" liability policies when the policy requires that notice of a claim be provided to the insurer promptly or "as soon as practicable." *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 643 (Colo. 2005). *Friedland* held that in cases where an insurer has received unreasonably delayed notice of a suit but such notice came prior to the suit's disposition, there is no presumption of prejudice and the insurer is required to prove prejudice. *Id.* at 648.

The Colorado Supreme Court has declined to extend the notice-prejudice rule to a date-certain notice requirement in a claims-made policy. *Craft v. Philadelphia Indem. Ins. Co.*, 343 P.3d 951, 953 (Colo. 2015). The court reasoned that in a claims-made policy, the date-certain notice requirement defines the scope of coverage and excusing

---

[2] On appeal, the Colorado Court of Appeals affirmed the judgment in all respects except for $2,461,735.60 awarded to Naomi Pressey for pre-majority economic damages. *Pressey by and through Pressey v. Children's Hospital Colorado*, __ P.3d __, 2017 COA 28 (Colo. App., March 9, 2017).

late notice in violation of such a requirement would rewrite a fundamental term of the insurance contract. *Id.* The court further found that the public policy reasons identified in *Friedland* for extending the notice-prejudice rule to a prompt notice provision should not apply to a date-certain provision in a claims-made policy. *Id.*

The decision in *Craft* declined to address the specific issue presented here: whether the notice-prejudice rule applies where the insured has complied with the date-certain notice requirement of a claims-made policy, but allegedly has not complied with the requirement that notice be provided to the insurer "as soon as practicable" after a lawsuit or claim is presented. *See id.* at 953.

On consideration of the Colorado Supreme Court's analysis in *Friedland* and *Craft*, this Court applies the notice-prejudice rule in this case. The policy reasons for applying the notice-prejudice rule in *Friedland* also apply in the circumstances presented here. Therefore Lexington bears the burden of proving both unreasonably late notice and prejudice. *See Friedland,* 105 P.3d at at 647, citing *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 231-32 (Colo. 2001).

CHC did not provide notice of the Pressey lawsuit "as soon as practicable" after it was presented to CHC. Lexington has not provided evidence sufficient to avoid summary judgment on its claim that it was prejudiced by delayed notice. It is undisputed that Lexington never directed any inquiries to CHC concerning the substance of the Pressey incident or lawsuit from April 29, 2008, when Lexington first received notice of the medical incident, until after the trial had commenced in March 2015. Even after AIG received notice of the lawsuit – whether on November 17, 2014, before the mediation, or December 2, 2014, after the mediation – AIG did not contact CHC to attempt to

6

determine the outcome of the mediation, whether further mediation was anticipated or would be appropriate, how CHC's attorney evaluated the case, or what his trial preparation and strategies entailed. AIG sent a form letter on December 26, 2014 stating that it would commence its review of the matter and advise CHC of any need for further information, but never inquired further until contacted during trial by CHC. Even during trial, when on March 23 Martin told King that he thought the case could settle for $3 million to $5 million, King did not ask him to pursue settlement and see if he could get a firm demand.

AIG and Lexington failed to make any inquiry about the case, exhibit any desire to learn about, comment on, or participate in preparation and trial, or otherwise exercise any claimed right under the Policy to monitor or work with CHC's attorney in settlement negotiations, investigation, or trial. This failure completely undermines Lexington's speculative and unsupported position that it was prejudiced because with earlier notice it would have been able to avoid or mitigate the liability it now faces by resolving the Pressey lawsuit for less than the ultimate judgment entered against CHC.

Based on the foregoing, it is

ORDERED that Children's Hospital Colorado's Motion for Summary Judgment (Doc. 49) is GRANTED. It is

FURTHER ORDERED that Lexington Insurance Company's Amended Motion for Summary Judgment (Doc. 51) is DENIED.

DATED: April 13, 2017.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge